ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| URS Federal Support Services, Inc. | )   ASBCA No. 59998-QUAN |
| | ) |
| Under Contract No. FA8108-09-D-0006 | ) |

APPEARANCES FOR THE APPELLANT:   Thomas O. Mason, Esq.
                                      Francis E. Purcell, Jr., Esq.
                                          Thompson Hine LLP
                                          Washington, DC

APPEARANCES FOR THE GOVERNMENT:   Jeffrey P. Hildebrant, Esq.
                                          Deputy Chief Trial Attorney
                                        Colby L. Sullins, Esq.
                                          Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE CLARKE ON URS' MOTION FOR ENTRY OF JUDGMENT

In its motion URS Federal Support Services, Inc. (URS) asks the Board to enter judgment in its favor in the amount of $667,220.58 plus interest, as a result of the Board's May 26, 2020 decision sustaining its appeal in part and returning it to the parties to negotiate the appropriate price for the change occasioned by Modification No. 03. *URS Fed. Support Servs.*, ASBCA No. 59998, 21-1 BCA ¶ 37,848 at finding 45. We have jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. Because URS failed to produce its cost data and negotiate the actual costs of performance at Ft. Knox and Kingsville in accordance with the Board's decision, its motion is granted but only in the amount of $141,297.53 as explained below.

## DISCUSSION

The appeal involves an Air Force (AF) contract for aircraft maintenance services at various locations in the United States. The contract required the maintenance and also specified the number and skills of personnel required to perform the maintenance. During performance the AF moved a total of five aircraft mechanics (five full-time equivalents) (FTE) from Ft. Knox, KY and Kingsville, TX to Ft. Hood, TX. It is obvious this change increased costs at Ft. Hood and decreased costs at Ft. Knox and Kingsville. URS maintains it is entitled to $667,220.58 for the change at Ft. Hood. The AF concedes that URS is entitled to $663,249.08 for the change at Ft. Hood. However, the AF claims a cost savings at Ft Knox, KY, and Kingsville, TX of $523,937.30, which it offsets against the $663,249.08 for a total AF liability of $139,311.78. The AF calculated the

savings / offset based on URS' proposed prices in AF "pricing sheets" for mechanics because URS refused to disclose its actual costs of performance. In this quantum dispute URS argues it is entitled to the full $667,220.58 without offset.

*The Board's Entitlement Decision*

In its May 26, 2020 Decision, the Board initially spent much of its time dealing with jurisdiction. Having resolved this issue in favor of jurisdiction, the Board decided:

> We agree with URS' argument that the AF calculation of the deductive change amount is "flawed" because the AF did not use URS' actual costs data. (App. Rule 11 reply br. at 18-19)
>
> URS is entitled to negotiate a fair and reasonable change, up or down, based on its actual costs at Ft. Knox and Kingsville. We also leave to the parties the matter of the slight difference between the parties' price increase for Ft. Hood. In this regard we sustain the AF's right to a modification for the reduction in FTE's at Ft. Knox and Kingsville, but do not accept its calculation of quantum.
>
> URS' appeal is sustained in part as it relates to staffing at Ft. Hood, otherwise, the remaining portion of the appeal regarding Ft. Knox and Kingsville is denied and the matter is returned to the parties to negotiate the appropriate price for the change occasioned by Modification No. 03 and in accordance with the above.

*URS Fed. Support Servs.*, ASBCA No. 59998, 21-1 BCA ¶ 37,848 at 183,784 [1]. Properly understood, the Board's decision sustained the AF's right to an offset based on savings at Ft. Knox and Kingsville, but gave URS an opportunity to reduce the offset of $523,937.30. We expected URS to produce its cost data in an attempt to prove, if it could[2], that its actual cost of performance was greater than the amounts shown in the pricing sheets thereby reducing the savings and offset. Our decision offered URS a second chance to reduce the offset that URS declined to take.

---

[1] Due to a processing problem at the Board the published decision was delayed and the citation is to volume 21-1 in the Board of Contract Appeals reporters, instead of 20-1. At the time of publication of this decision, the decision was still not available on Westlaw

[2] If URS actually saved more than the AF's offset amount due to efficiency it was in no danger of the Board increasing the offset because this was a fixed price contract.

*The $523,937.30 Offset*

In our decision we acknowledged that the AF used URS' pricing sheets to calculate the $523,937.30 offset because URS refused to provide its cost data:

> The AF states it had no choice other than to use URS' proposal and the pricing sheets to calculate the price reduction because URS refused to negotiate and disclose its actual costs (gov't Rule 11 br. at 69). This appears to be true but does not support a decision on our part to agree with the AF's calculation. Just because the AF required URS to price its proposal using the stated minimum team complement and AF pricing sheets does not mean that URS' actual incurred cost matched those sheets. We agree with URS' argument that the AF calculation of the deductive change amount is "flawed" because the AF did not use URS' actual costs data. (App. Rule 11 reply br. at 18-19)

*URS Fed. Support Servs.*, 21-1 BCA ¶ 37,848 at 183,783-84. Although we initially agree that the AF's calculation was "flawed" it was because URS refused to produce its actual costs of performance at Ft. Knox and Kingsville. In its briefs the AF does not provide its calculations or an explanation detailing how it calculated the $523,937.30.[3] However, although in its collective briefs URS contests AF entitlement to the offset, it does not challenge the AF's calculation of the $523,937.30. We find that because of URS' obstruction, the AF had no choice but to use URS' pricing sheets to calculate the estimated savings of $523,937.30. Thus we hold that the pricing sheets are the best evidence available of URS's costs and that this amount is reasonable under the circumstances and reasonably reflects URS' cost savings at Ft. Knox and Kingsville. We therefore accept the $523,937.30 as a reasonable savings and offset given URS' refusal to cooperate and produce its costs. We should point out that the $523,937.30 represents an estimate of the cost savings experienced by URS at Ft. Knox and Kingsville from moving five FTE's to Ft. Hood. If URS' costs of performing at Ft. Knox and Kingsville exceeded that estimated costs, that amount should be deducted to reduce the $523,937.30 offset to more accurately reflect the costs actually incurred by URS at Ft. Knox and Kingsville. It was this adjustment that the Board's entitlement decision gave URS an opportunity to prove to reduce the offset. Keep in mind that production of URS' actual costs data was for URS' benefit by possibly reducing the $523,937.30 offset. Instead, URS choose to contest the entire $523,937.30 on theories we reject below.

---

[3] If the calculations are somewhere in the record it was the AF's obligation to bring them to our attention.

3

*The Quantum Record was Not Closed*

One of URS' central arguments is that the record is closed. We understand URS's point to be that its cost data is not in the record and may not be introduced into evidence because the record is closed. URS uses this argument in both its motion and response to the AF's Opposition. Here is one example in the motion's introductory summary:

> There is no evidence in the current record, which has been closed for several years pursuant to the Air Force's agreement, that supports or would support an adjustment of any amount at either Ft. Knox or Kingsville.

(App. mot. at 1-2) This argument overlooks the fact that the pricing sheets are in the record. *URS Fed. Support Servs.*, 21-1 BCA ¶ 37,848 at findings 13-16, 24-25. In any event, URS does not differentiate between the record in the entitlement litigation and the record in the quantum litigation – they are not one-in-the-same. By inviting the parties to consider URS' actual costs at Ft. Knox and Kingsville to calculate the offset, if any, the Board made it clear the quantum record was open to accept URS's costs data of actual performance costs. Based in part on this "record" argument, URS refused to produce and explain its actual cost data from Ft. Knox and Kingsville. The only evidence the AF had as a result was URS's pricing sheets supporting its bid. Given the obvious savings, the AF had no choice but to use the pricing sheets to develop its savings and offset which we held above to be reasonable. To summarize, the quantum record was not closed and we reject URS's argument that it was.

*The Burden of Proof is On URS*

Another central argument URS relies upon is that the Burden of Proof to establish the offset is on the AF:

> The Board should reject the Air Force's efforts and find that it has failed to meet its burden to demonstrate the amount of any adjustment in performance costs at Ft. Knox or Kingsville.

(App. mot. at 2) We agree that the AF had the initial burden to prove it is entitled to an offset. It is obvious that removing five FTEs (mechanics) from Ft. Knox and Kingsville would result in savings by reducing URS' labor costs. The estimated savings can be readily calculated using URS' pricing sheets, but without URS' actual costs data, it is just an estimate. By refusing to produce and explain its cost data URS prevented the AF from calculating a more precise offset amount. Again, a more precise calculation of savings based on URS' cost data might result in an offset reduction which would benefit URS. The AF was forced to use all it had available, URS's pricing sheets, to calculate the

4

$523,937.30 savings and offset.  Under these circumstances, we hold that the AF proved a prima facie case for its $523,937.30 offset and the burden of proof to challenge that offset shifted to URS.  This situation is analogous to a termination for default where the government has the initial burden.  However, it is relatively easy for the government to make a prima facie case and when it does the burden shifts to the contractor to prove its default was excused:

> The government has the burden of proof in a termination for default case. *New Era Contract Sales, Inc.*, ASBCA No. 56661 et al., 11-1 BCA ¶ 34,738 at 171,022. Normally, once the government proves failure to make timely delivery, it satisfies its burden to make a prima facie case of default and the burden shifts to the contractor to prove an excuse. *Id.* (Failure to make timely delivery establishes a prima facie case for termination for default).

*DODS, Inc.*, ASBCA No. 57667, 13-1 BCA ¶ 35,203 at 172,715; *see CKC Systems, Inc.*, ASBCA No. 61025, 19-1 BCA ¶ 37,385 at 181,750  In view of URS' obstruction, we hold that the AF's use of URS' pricing sheets to calculate the cost savings established a prima facie case for the offset.  This is consistent with the Board's entitlement decision where we gave URS a second chance to prove it was entitled to a reduction in the AF's $523,937.30 offset.  It is not the AF's burden to prove that URS is entitled to a reduction in or elimination of the $523,937.30 – that is URS' burden.  In the absence of any other alternative, we no longer consider the AF's calculation without the benefit of actual cost data "flawed."

*The Adjusted Value of the Change at Ft. Hood is $141,297.53*

Neither party presented the details of their calculations of the value of the change at Ft. Hood.  The difference between the parties being only $3,971.50 we split the difference ($1,985.75) and hold that the value of the change at Ft. Hood is $665,234.83 ($1,985.75 + $663,249.08).  Subtracting the offset of $523,937.30 from $665,234.83 results in $141,297.53 as the adjusted amount.

*URS' Argument*

URS' argument seems illogical to us.  Faced with an obvious cost savings at Ft. Knox and Kingsville, the argument appears to be, "URS refused to provide the AF with cost data because the record is closed and therefore the AF cannot meet its burden to prove an accurate offset and any reduction URS might be entitled to.  Therefore, the Board should pay URS $667,220.58 without any reduction for the obvious cost savings at Ft. Knox and Kingsville."  We found above that the quantum record was not closed and the burden has shifted to URS.  This argument also overlooks the fact that URS'

refusal to provide its cost data forced the AF to use the pricing sheets to estimate the savings.  URS caused the problem of a less accurate savings calculation and now seeks to rely on the same problem to prevail.  URS asks the Board to condone its obstructionist behavior which we will not do.  The logic supporting URS' arguments escapes us.

## CONCLUSION

Having failed to prove that it is entitled to elimination of or a reduction in the $523,937.30 offset calculated by the AF, we grant URS' Motion in the adjusted amount of $141,297.53 plus CDA interest from January 30, 2015 (R4, tab 46; joint stip. ¶ 22), until date of payment.

Dated:  August 3, 2021

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59998-QUAN, Appeal of URS Federal Support Services, Inc., rendered in conformance with the Board's Charter.

Dated:  August 3, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals